THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

*********************************************
Jennifer Pollard, individually and as next friend    *
and parent of her minor son, J.H.    *
   *
    Plaintiff    *
   *    Case No. 1:14-cv-14043-DJC
v.    *
   *
Georgetown School District,    *
Heidi Mongeau, individually;    *
Peter Lucia, individually;    *
Brian Gill, individually; and    *
Carol Jacobs, individually and as Superintendent.    *
   *
    Defendants.    *
*********************************************

## PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION TO DISMISS

  NOW COMES the plaintiff, Jennifer Pollard, individually and as next friend and parent of her minor son, J.H., by and through her counsel, Getman, Schulthess, Steere & Poulin, P.A., and respectfully submits the foregoing Memorandum of Law in Support of Objection to Defendants' Motion to Dismiss and in support thereof states the following:

**I.**   **The defendants' motion to dismiss is improper:**

  The defendants have moved to dismiss on various grounds pursuant to Rule 12 of the Federal Rules of Civil Procedure.  Before turning to the merits, however, there are several factors that make the defendants' motion improper.

  **A.**   **Defendants' motion violates L.R. 7.1(a)(2).**

  The defense sought and received assent to file their respective responses to the plaintiffs' complaint. They did not seek to assent for additional time to file a dispositive motion. While on

its face, this assertion may seem hyper-picky, previous dialogue between counsel demonstrates the guile in the filing of the motion to dismiss. Moreover, this dialogue demonstrates that while counsel did confer about the original complaint the defense did not, as claimed, confer and attempt "in good faith to resolve or narrow the issue" relative to the Amended Complaint. *See* L.R. 7.1(a)(2).

The plaintiffs' Amended Complaint, which was filed on January 13, 2015, was the result of counsel discussing the defense's issues with the original complaint.  That dialogue ended with the promise of an amended complaint and with plaintiffs' counsel stating "Thank you, again, for letting me know about your concerns with the complaint.  Certainly, if you continue to have concerns or have any new concerns following the amended complaint we can discuss those at that time.  If you would like to discuss this matter further, please do not hesitate to contact me." *See* Exhibit A, Correspondence between Counsel.[1]

The defense never voiced any concerns about the amended complaint.  The only issue presented was a request for additional time. Counsel's certification that she has "conferred and corresponded with counsel for the Plaintiff, Debbie Makris, on December 16, 2014 and have [sic] attempted in good faith to resolve or narrow the issues raised in this motion" is inaccurate. As such, the instant motion is in violation of this Court's Local Rules and should be summarily rejected.

      **B.**      **The defendants have all of the specific facts and details the absence of which forms the basis of their motion.**

---

[1] While a motion to dismiss should be considered based on the four corners of the complaint, the instant issues relate to the prerequisites for the filing of motions before this Court; namely the requirements of Local Rule 7.1, administrative exhaustion and the credibility of the defendants' claims in their motion.

The defendants also claim that the Amended Complaint lacks certain details such that they cannot discern the elements of each of the counts.  They say that it should contain specific dates, the names of each of the bullies, and more details about what, precisely, each of them did that forms the basis of the plaintiffs' claims. The Amended Complaint does contain the necessary information and, more importantly, even pretending that the defendants do not have firsthand knowledge of every incident that gives rise to each count, their instant claims of ignorance are belied by the fact that they have had possession of all pertinent information and that they created much of it, themselves.

This lawsuit was instituted after an arduous administrative process before the Massachusetts Department of Education that resulted in multiple findings that the District and the assistant principal of the Georgetown Middle School did not fully comply with the District's Bullying Prevention and Intervention Plan pursuant to G.L. c. 71, § 370 and in ensuring J.H.'s "safety needs."  *See* DOE Findings, attached as Exhibit B.

Prior to the DOE's findings, the plaintiffs acquired J.H.'s school records and all correspondence to and between school officials concerning the conduct that forms the basis of J.H.'s complaints.  Those documents came from the very defendants who now complain to this Court that they are prejudiced by the absence of certain details from the Amended Complaint. What's more, counsel for the defendants is the same attorney who appeared before the DOE on behalf of the Georgetown School District.   She, and they, were provided a plethora of documents, including but not limited to police reports, copies of cyber-correspondence, and J.H.'s medical records that contained each and every name, date and the specific conduct of J.H., his detractors and school employees.  The defendant District used this information to put forth a salient, yet unsuccessful, defense before the DOE.   The current complaint about alleged

deficiencies with the Amended Complaint is merely a fiction considering that the defendants, through their counsel, have been in possession of this information all along.

The Court's review of a motion to dismiss may include facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice. *See* In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir.1998). The plaintiff pled exhaustion of administrative remedies in the Amended Complaint and the findings by the DOE. That process necessarily included the defendants' participation and their access to all pertinent information.

The above information plainly shows that the very foundation for defendants' motion is insincere. In addition, the failure to comply with L.R 7.1(a)(2) prior to filing a Rule 12(b)(6) may warrant sanctions. Scott v. Associated Credit Servs., 2012 U.S. Dist. LEXIS 145835, 7, 2012 WL 4856060 (D. Mass. Oct. 10, 2012).  As such, the defendants' motion should be summarily rejected.

## II.     **The plaintiff's negligence remains viable**:

### 1. **Presentment:**

The defendants correctly allege that the plaintiffs did not present J.H.'s state tort claims to the "executive officer" of the Town of Georgetown.  However, it cannot reasonably be disputed that the pertinent executive of the Town of Georgetown, the Superintendent of the Georgetown School District, was provided proper notice of all of J.H.'s claims and the intent to file suit should the basis for his claims not be timely cured.

The purpose for the presentment requirement is because it (1) enables government units to investigate promptly alleged incident to facilitate immediate assessment of liability, because fraudulent and meritless claims are harder to detect when time is allowed to elapse; (2) protects against cost of needless litigation by increasing likelihood of early adjustment of disputes and out of court settlements; (3) prevents future accidents and expenses by enabling governmental unit to make necessary repairs or to improve procedures; and (4) it aids municipalities in determining future taxes and planning budgets. McGrath v. Stanley, 397 Mass 775, 493 NE2d 832 (1986), *citing* ALM GL ch. 258, § 4.

J.H. and his mother gave notice to the Town through the School District when it became clear that J.H. was being targeted in a systematic and continuous manner.  Each incident was brought to the District's attention.  J.H.'s mother's pleas for relief for her son were numerous.  She begged the District to find an alternative public school placement for him.  *See* Email, for example, attached as Exhibit D.  The entire claim was laid out for the Town when J.H. sought relief from the DOE.  *See* Feinberg letter, attached As Exhibit E.  That the District was fully aware of the claim and the requested relief is borne by the attached letter from Defense Counsel. *See* Levenson Ltr, attached as Exhibit C.

The presentation requirement has been satisfied because the Town of Georgetown has had ample notice of the claim and had every chance to investigate it, assess liability, attempt resolution, improve procedures; and plan for the future. Perez v. Amherst-Pelham Regional School Committee, 410 Mass 396, 572 NE2d 566 (1991) (Mailing of claim letter to chairperson of regional school committee was sufficient to satisfy presentment requirement of Massachusetts Tort Claims Act); Chiao-Yun Ku v. Town of Framingham, 53 Mass App 727, 762 NE2d 855 (2002) (Purpose of presentment was served by plaintiff's letter to chairman of town board of

selectmen alleging facts supporting plaintiff's claim that town negligently supervised independent contractor driving truck salting town roads and by follow-up letter to town's "litigation specialist" sent at town's direction).  Under these circumstances, to whatever degree the presentment requirement has not been formally met, the goal of that requirement has been met and any additional notice requirements should be waived.[2]  Moran v. Mashpee, 17 Mass App 679, 461 NE2d 1231 (1984); Doe v. Blandford, 402 Mass 831, 525 NE2d 403 (1988) (presentment period for claim against school district tolled for continuing tort).

> ### 2.      Immunity:

The defendants claim in nothing more than a *pro forma* way that the individual defendants are entitled to immunity. They cite Abrami v. Town of Amherst, 2013 WL 3777070 (D. Mass. 2013), which is not only unpublished but doesn't even discuss the concept of automatic immunity for Town officials in the face of negligence claims.  Notwithstanding, the allegations of negligence against the individual defendants form the basis of the District's *respondeat superior* liability for which the District has no such immunity.

## III.   Exhaustion:

Nowhere in the three pages of recitation of boilerplate law on administrative exhaustion do the defendants even mention that the plaintiff did, indeed, exhaust his administrative remedies with his complaint before the Massachusetts DOE, which found in his favor. Exhibit B.

The Amended Complaint also makes reference to an ongoing investigation by the Department of Justice.  That investigation relates to the bullying J.H. suffered as a result of his

---

[2] In addition, the time period for presentment is still open since two years from the accrual of the causes of action have not yet gone by.  To dismiss this case at this point would put form over substance.

religion and ethnicity.   That the DOJ's investigation remains incomplete is not a basis for dismissal because J.H. did administratively exhaust by way of the Massachusetts DOE.

The failure of the defendants to reference the DOE review plainly shows that their current arguments for dismissal lack the necessary underpinnings of sincerity and good faith.   Their motion, therefore, should be rejected.

## IV.    **Standard of Review:**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must present "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "The factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. To expand on this standard further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556.

A "court takes as true all well-pleaded facts in the complaint[], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir.2009). The issues must be resolved in the light most favorable to the plaintiff with any doubt resolved in his behalf." Jenkins v. McKeithen, 395 U.S. 411, 89 S. Ct. 1843 (1969). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Harper v. Cserr, 544 F.2d. 1121, 1122 (1st Cir.

1976).  Accordingly, the Court must deny a motion to dismiss if the allegations in the complaint permit relief to be granted on any theory even one not expressly stated therein.

**V.**      **The Amended Complaint satisfies the requirements of Rule 8.**

A complaint must set forth a claim for relief by way of:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Rule 8(a), Fed.R.Civ.Proc.

As applicable to all claims, J.H.'s Amended Complaint speaks for itself and sets forth "enough facts to state a claim to relief that is plausible on its face" that exceed the requirements of Rule 8.  The Amended Complaint states that J.H. is the member of a protected class because he is Jewish and that he is entitled to the special statutory protections afforded to children with disabilities because he had a 504 Plan in place at the time of his enrollment at the Georgetown Middle School. It further alleges that J.H. was entitled to public education within the Town of Georgetown; and that his Complaint was filed within the pertinent statute of limitations.

J.H. further alleges that he was physically and verbally abused on school grounds by other students enrolled in the Georgetown Middle-High School because of the characterizations that qualify him for protected class status.  Specific examples of that abuse and the conduct of two teachers and the administrators are also included in the Amended Complaint.  It also contains facts about the abuse that followed J.H. from the school into cyberspace and public forums.  The identity of each perpetrator is contained in records already in the possession of the

defendants, as are each of the dates, locations and circumstances of each incident.[3]   The

defendants' are named in the complaint and their respective roles are set forth therein.   J.H.'s

damages are alleged, such as the medical treatment necessitated by the defendants' conduct and,

ultimately, the need for him to be educated in a different environment.

The facts alleged satisfy Rule 8's requirements.   As stated below, the specific counts

within the Amended Complaint spell out how application of the pertinent legal standards to those

facts entitle J.H. and his mother and next friend to relief.

### 1.      Equal Protection:

J.H. has properly and sufficiently alleged that he is a member of a suspect class and that

he suffered disparate treatment due to the District's custom, practice and policy in the manner by

which it conducts its investigations and enforces its anti-bullying policy. See Amended

Complaint ("AC") at ¶¶ 8-11. The defendants were aware that J.H. was targeted for being Jewish

and for having health-related physical and behavioral characteristics. AC at ¶¶ 18, 32-43. They

failed to properly investigate the bullying and the manner in which they did investigate left J.H.

exposed to even more abuse. *Id.*   Moreover, two different teachers ridiculed him and targeted

him, one because of his allegedly feminine appearance and the other because of the issues

identified in J.H.'s 504 Plan. AC at ¶¶ 33, 34.

Equal protection violations can result from the deliberate, official decision to follow one

course of action rather than various other possibilities. Pembaur v. City of Cincinnati, 475 U.S.

469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).  Here, there is at least the inference that the

defendants' conduct was due to a custom, practice or policy of perpetuating the abuse of those

---

[3] The Georgetown Police Department was unable to identify some of J.H.'s assailants but the facts in the complaint allege that each incident stemmed from bullying that started on school grounds. AC at ¶¶ 21, 29-31.

who have J.H.'s characterizations. AC at ¶¶ 18, 32-43. On its face, therefore, the Amended
Complaint sets forth "enough facts to state a claim to relief that is plausible".

Even without evidence that other Jewish children and/or those who have medical and
developmental challenges have been treated badly by the defendants in the past,  J.H. has still
adequately alleged that he has; and the direct correlation between his status and the bullying.
Under equal protection case law throughout the nation, this is enough to satisfy his initial burden
of showing that he, a class of one, was deprived equal protection under the law.[4]

Whether there is sufficient evidence to support this claim is an issue that the defendants
can explore via a motion for summary judgment after discovery.  At this stage, though, the Court

---

[4] SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008); Lazy Y Ranch
Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008) ("the defendants simply harbor animus
against her in particular and therefore treated her arbitrarily"); Lindquist v. City of Pasadena, 525
F.3d 383, 387 n. 2 (5th Cir. 2008); Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 849
(10th Cir. 2005); Jennings v. City of Stillwater, 383 F.3d 1199, 1211-12 (10th Cir. 2004);
Williams v. Pryor, 240 F.3d 944, 951 (11th Cir. 2001); Shipp v. McMahon, 234 F.3d 907, 916-
17 (5th Cir. 2000), overruled on other grounds by McClendon v. City of Columbia, 305 F.3d
314, 329 (5th Cir. 2002) (en banc) (per curiam); Bryan v. City of Madison, 213 F.3d 267, 276-77
and n. 17 (5th Cir. 2000); Hanes v. Zurick, 578 F.3d 491, 494 (7th Cir. 2009); United States v.
Moore, 543 F.3d 891, 898-99 (7th Cir. 2008); Cordi-Allen v. Conlon, 494 F.3d 245, 250 n. 3 (1st
Cir. 2007); Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1210 (10th Cir. 2006);
Hayut v. State University of New York, 352 F.3d 733, 754 n. 15 (2d Cir. 2003); DeMuria v.
Hawkes, 328 F.3d 704, 707 n. 2 (2d Cir. 2003); Giordano v. City of New York, 274 F.3d 740,
743 (2d Cir. 2001); Gerhart v. Lake County, 637 F.3d 1013, 1022 (9th Cir. 2011); Phillips v.
County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008); Stotter v. University of Texas, 508 F.3d
812, 824 n. 3 (5th Cir. 2007); Scarbrough v. Morgan County Board of Education, 470 F.3d 250,
261 (6th Cir. 2006); Trihealth, Inc. v. Board of Commissioners, 430 F.3d 783, 788 (6th Cir.
2005); Boone v. Spurgess, 385 F.3d 923, 932 (6th Cir. 2004); Cobb v. Pozzi, 363 F.3d 89, 110
(2d Cir. 2004); Renchenski v. Williams, 622 F.3d 315, 337-38 (3d Cir. 2010); Grider v. City of
Auburn, 618 F.3d 1240, 1263-64 (11th Cir. 2010); Association of Cleveland Fire Fighters v. City
of Cleveland, 502 F.3d 545, 549 (6th. Cir. 2007); Griffin Industries, Inc. v. Irvin, 496 F.3d 1189,
1202 (11th Cir. 2007); Barstad v. Murray, 420 F.3d 880, 884 (8th Cir. 2005); Tri-County Paving,
Inc. v. Ashe County, 281 F.3d 430, 439 (4th Cir. 2002); Costello v. Mitchell Public School Dist.
79, 266 F.3d 916, 921 (8th Cir. 2001).

must take the pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff's theory of liability, and draw all reasonable inferences therefrom in the plaintiff's favor." Fothergill v. United States, 566 F.3d at 251.

2.       **Procedural Due Process**:

Due process guarantees notice and the right to be heard. See, e.g., Goss v. Lopez, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). Procedural due process claims are flexible. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972),

"The requirements of procedural due process stem from the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S. Ct. 2701 (1972). In resolving a procedural due process claim, the plaintiff must have a property interest for purposes of the Fourteenth Amendment. O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005); Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796 (2005). The Fourteenth Amendment protects a plaintiffs' fundamental right to direct the education of their children and mandates that they receive due process before they are deprived of that right. In addition, the IDEA guarantees a free and appropriate public education to all children with disabilities. 20 U.S.C. § 1400(d)(1)(A); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 58 (1st Cir. Mass. 2002).

In the Amended Complaint, J.H. alleges, and the DOE found, multiple instances of the defendants' procedural failures. AC at ¶ 46.  In particular, the DOE found that when J.H.'s mother reported that he had been the target of threats of being stabbed, killed and subjected to other harassment, "[t]he District's Report, the completed Incident Form and the flow chart used by School Staff to determine bullying, do not indicate that steps were taken prior to the investigation to assess the target's need for safety. Further, the documents do not clearly indicate

that the assistant principal made a determination of whether cyber-bullying was substantiated."[5] Exhibit B.

Relative to the rumors about photographs of J.H. in a compromised state, the DOE found that the assistant principal "did not complete the District's Bullying Investigation Form and/or the flowchart as had been done for prior investigations; did not provide information regarding her determination; notification to parents and any steps taken to monitor JH following the incident." *Id.* Similarly, with regards to the incident involving J.H. being assaulted while playing dodge ball the DOE found that the District and its assistant principal "did not fully comply with its Bullying Prevention and Intervention Plan pursuant to G.L. c. 71, § 370" in making the necessary determinations regarding the specific occurrences of bullying. *See* Exhibit B.

In other words, the defendants did not take the necessary procedural steps in responding to the attacks on J.H.   Without proper findings, the defendants could not and did not appropriately or adequately vindicate J.H.'s right to be educated in a safe environment.

In addition, the complaint alleges, and the DOE found, that and the defendants failed "in assessing JH's safety needs" prior to, during and after the investigatory process.  The Amended Complaint, therefore, sets forth multiple violations of procedural due process.

**3.      Freedom of Association:**

There are two kinds of protected association: intimate association and expressive association. <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-18, 104 S. Ct. 3244 (1984).

---

[5]The DOE documents are appropriate for review by this Court because there is no question as to their authenticity and they are necessarily included by reference in the Complaint.  *See* <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d at 15; and <u>Beddall v. State Street Bank and Trust Co.</u>, 137 F.3d at 17.

According to the Supreme Court, the education of one's children is an intimate association protected by the constitution. *Id.* at 619.

The second type of associational freedom, expressive association, protects "associations formed for the purpose of engaging in activities protected by the First Amendment, such as the exercise of speech, assembly, and religion." There is also a corresponding right to "associate with others in pursuit of a wide variety of political, social, economic, **educational,** religious, and cultural ends." Roberts at 622, 104 S. Ct. 3244 (emphasis added). A corollary of the First Amendment freedom of association is the right not to associate. *See, e.g.,* Abood v. Detroit Board of Education, 431 U.S. 209, 234-36, 97 S. Ct. 1782 (1977); Chicago Teachers' Union v. Hudson, 475 U.S. 292, 301, 106 S. Ct. 1066 (1986).

The Amended Complaint is replete with factual support that J.H. was deprived of the right to associate with the few friends he was able to make because of the manner in which the defendants dealt with the abuse to which he was subjected.  AC at ¶¶ 28, 32-43. Time and time again, any child who dared to befriend J.H. was interrogated and isolated merely for being near J.H. when he was abused by others. AC at ¶¶ 19-22.  The result was that J.H. had *no one* with whom to voluntarily associate.  AC at ¶¶ 19, 28, 34, 35. At the same time, the defendants failed to take reasonable steps to protect him from the association he did not want, i.e. association with the bullies as they continued their relentless attacks without any meaningful interference by the defendants.  AC at ¶¶ 18, 20, 22, 28, 37, 40, 42. These claims aptly set forth violations of J.H.'s freedom of association.

### 4.    Retaliation:

Both the Rehabilitation Act and the First Amendment pursuant to § 1983 prohibit retaliation against any person, whether disabled or not, for opposing disability-based

discrimination <u>Colón-Fontánez v. Municipality of San Juan</u>, 660 F.3d 17, 36 (1st Cir. 2011); <u>Powell v. Alexander</u>, 391 F.3d 1, 16 (1st Cir. 2004) ("Claims of retaliation for the exercise of First Amendment rights are cognizable under§ 1983."); <u>D.B. v. Esposito</u>, 675 F.3d 26, 40-41 (1st Cir. 2012). To establish a claim for retaliation under the Retaliation Act, a plaintiff must allege that (1) he engaged in protected conduct, (2) he was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action. *See* <u>Carreras v. Sajo, García & Partners</u>, 596 F.3d 25, 35 (1st Cir. 2010), *citing* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 801-03, 93 S. Ct. 1817 (1973).

To establish a claim for retaliation under the First Amendment, the plaintiff must prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action. <u>D.B. v. Esposito</u>, 675 F.3d at 43. An adverse action is one that might well dissuade a reasonable person from making or supporting a charge of discrimination. <u>Colón-Fontánez</u>, 660 F.3d at 36-37.

The complaint alleges that J.H. and his mother reported multiple instances of bullying, clearly constitutionally protected conduct. AC at ¶¶ 32-43. They also shared that the bullying revolved around the characteristics that formed the basis for his 504 Plan. Not only did the defendants react adversely by creating situations that made J.H. more vulnerable to attack, on at least one occasion, J.H. was admonished for reporting threats against him and threatened with disciplinary action. AC at ¶¶ 38-45. Therefore, the complaint adequately sets forth claims for retaliation.

5.      **Substantive Due Process:**

There are two well-recognized exceptions to the general rule that a governmental body has no obligation to protect its citizens' substantive due process rights from the actions of private actors. DeShaney v. Winnebago Cnty. Dept. of Soc. Servs., 489 U.S. 189, 195, 109 S. Ct. 998 (1989). The first applies when there is a special relationship between the government actor and the individual. DeShaney, 489 U.S. at 199-201; Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The second applies when the government takes an affirmative action that either creates or increases the risk of harm to the plaintiff under circumstances demonstrating that it must have known or clearly should have known that its actions would endangered him. *Id.*

J.H. has pled facts that give rise to the defendants' duty to protect him from third parties, as well as facts that demonstrate that the defendants created and exacerbated the risks he faced because of those third parties. AC at ¶¶ 38-45. *See* Pagano v. Massapequa Pub. Schs., 714 F. Supp. 641, 643, (E.D.N.Y. 1989) ("We consider elementary school students who are required to attend school, the truancy laws still being in effect, to be owed some duty of care by defendants which may or may not rise to the level required ....").

6.      **Title VI:**

Title VI of the Civil Rights Act prohibits intentional discrimination on the basis of "race, color, or national origin" by any federally assisted program or activity. 42 U.S.C. § 2000d; Alexander v. Sandoval, 532 U.S. 275, 280, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). A plaintiff can show intent by proving the school district's deliberate indifference caused him damages. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 642-43, 119 S. Ct. 1661 (1999). To prevail on a Title VI harassment claim, Plaintiffs must prove (1) the harassment is "so severe, pervasive, and objectively offensive that it effectively bars [their] access to an educational opportunity or

benefit," (2) the school district had actual knowledge of the harassment, and (3) the school district was deliberately indifferent. <u>Davis</u>, 526 U.S. at 633. The school district is deliberately indifferent only where its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648.

J.H. has alleged that the defendants knew of the repetitive and continuous harassment he suffered as a result of his Jewish heritage and his medical and developmental characteristics. AC at ¶¶ 38-45.  He further alleged that the defendants' response was woefully inadequate and not only failed to afford him any relief, the responses exacerbated his suffering and exposed to him more attacks. *Id.* While the defendants may challenge the sufficiency of the evidence relative to these claims, here is no the forum to bring such a challenge because, as pled, the complaint amply sets forth the elements of a Title VI violation.

### 7.    Intentional Infliction of Emotional Distress.

To make out a claim of intentional infliction of emotional distress, the plaintiffs were required to show (1) that the defendant knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe. <u>Howell v. Enterprise Publ. Co</u>., 455 Mass. 641, 672, 920 N.E.2d 1 (2010); <u>Sena v. Commonwealth</u>, 417 Mass. 250, 263-264, 629 N.E.2d 986 (1994).

While the standard for making a claim of intentional infliction of emotional distress is very high, *see* <u>Agis v. Howard Johnson Co</u>., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976), the facts pled here  justify the survival of this claim.  The complaint makes clear that J.H. was a child struggling with conditions that made his childhood physically and emotionally difficult. AC at ¶¶ 10-12. He and his parents trusted the defendants with his emotional and physical safety.

AC at ¶¶ 13, 16-17, 38. They trusted the defendants with the responsibility of his education and trusted them to honor the authority with which they were vested by the Town and the Commonwealth and for which the District was compensated by the federal government. *Id.*

Instead of honoring that trust and their respective duties, the defendants grossly neglected them. In particular, J.H.'s gym teacher referred to him as a girl in front of the entire class, perpetuating his effeminate stereotype and encouraging ridicule from the very students who were already targeting him. AC at ¶¶ 33, 35. His science teacher forced him to sit alone during group projects thereby encouraging those same students to further ostracize him against the very directives of J.H.'s 504 Plan. AC at ¶¶ 16, 17, 34, 35.  The administrative defendants also allowed books to remain in circulation despite specific knowledge of that they contained homophobic references to J.H. and graffiti about his purportedly tiny sex organs. AC at ¶¶ 26, 81.  For nearly a year, despite promises that the books would be removed, every single time a student opened one of those books J.H. suffered with humiliation. *Id*. While this conduct may not be extreme and outrageous to an adult, for a child with J.H.'s issues (or any child) this conduct is cruel and gut-wrenching when facilitated by those who were required by law, if not by their own consciences, to shield him from this type of abuse.

## VI.  **Punitive Damages**:

The defendants make a general assertion that they cannot be made to pay punitive damages.  This is an argument for a different day and inappropriate for a motion to dismiss.

## VII.  **J.H.'s mother has standing to bring forth individual claims.**

The defendants claim that J.H.'s mother and next friend is not entitled to bring claims in her individual capacity.  However, the causes of actions pled in the Amended Complaint give her individual rights for which she may seek vindication.

The Fourteenth Amendment protects Plaintiffs' fundamental right to direct the education of their children and mandates that they receive due process before they are deprived of that right. *See* Barrett v. Steubenville City Sch., 388 F.3d 967, 972 (6th Cir. 2004). Due process guarantees notice and the right to be heard. *See, e.g.,* Goss v. Lopez, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

The IDEA also provides parents with an opportunity to lodge formal complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id*. § 1415(b)(6). A complaining parent has recourse to an impartial due process hearing conducted by either the local or state educational agency (and if the hearing is conducted at the local level, the parent may then appeal to the state agency). *Id.* § 1415(f)-(g); Frazier v. Fairhaven Sch. Comm., 276 F.3d at (1st Cir. 2002); Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247 (1st Cir. 2003).

In Weber v. Cranston Sch. Comm., 212 F.3d 41, 47-48 (1st Cir. 2000), the First Circuit Court of Appeals held that a parent has standing to conferred by the anti-retaliation regulation adopted pursuant to Title VI of the Civil Rights Act, 34 C.F.R. § 100.7(e), to file suit for deprivations of her child's right under Section 504 of the Rehabilitation Act. *See, also,* Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 208, 93 S. Ct. 364 (1972).

J.H.'s mother has consistently advocated for her son.  She communicated with the defendants regularly, candidly providing them with information about J.H.'s medical and developmental conditions, and calling their attention to each incident of bullying. Throughout the time J.H. was enrolled at the Georgetown Middle School, Ms. Pollard trusted the defendants to protect J.H. and provide him with a free and appropriate education in a safe and nurturing environment where he would not be exploited and abused because of his differences.

As it became apparent that the defendants were unwilling and then unable to do so, Ms. Pollard implored upon them to take steps to secure a public education for him elsewhere. And while the victimization of J.H. worsened, the defendants' responses to it decreased in both quality and quantity. In the end, it was clear that the defendants were fed up and simply gave up on their obligations to J.H., clearly in response to Ms. Pollard *not* giving up. This is quintessential retaliation.

When the only assistance they would provide was meaningless, ultimately, Ms. Pollard was forced to make the unenviable choice between J.H.'s safety and emotional well-being and her own financial stability, choosing to expend the significant resources to enroll him in private school.   In addition, she suffered damages associated with the increase in J.H.'s medical expenses that his treatment providers will say was caused directly by his educational environment, the environment the defendants allowed to exist and actually made worse by their own conduct.

All of these facts are aptly pled in the Amended Complaint.   Thus, to claim that Ms. Pollard does not have standing to request that she be compensated under these circumstances defies common sense and belies the nature of statutory and constitutional rights at issue in the matter.

**VIII.   <u>Conclusion:</u>**

.   "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." <u>Kusek v. Family Circle</u>, 894 F. Supp. 522, 527 (D. Mass. 1995), *quoting* <u>Calero Colon v. Betancourt Lebron, et al.</u> (D.P.R. 1995), *citing* <u>Festa v. Local 3 International Brotherhood of Electrical Workers</u>, 905 F.2d 35, 37 (2d Cir. 1990).   Here, other than the demonstrably untrue assertion about the failure to exhaust, the bulk of the defendants' motion to

dismiss challenges whether the plaintiffs have sufficient evidence to prove the causes of action

pled in the Amended Complaint. In doing so, they have patently ignored the allegations that have

been pled and have failed to apply the appropriate legal standards to those allegations in even the

most cursory sense.  As such, their motion should be denied.

Respectfully submitted:

Jennifer Pollard, individually and as next
friend and parent of her minor son, J.H.

By her attorneys,

Getman, Schulthess, Steere & Poulin, P.A.

Dated: March 10, 2015                          By: */s/ Debbie Lorusso Makris*
                                               Debbie Lorusso Makris
                                               MA BBO# 567450
                                               1838 Elm St.
                                               Manchester, NH 03104
                                               603-634-4300

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will therefore be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

By:     */s/ Debbie Lorusso Makris*
        Debbie Lorusso Makris
        MA BBO# 567450