UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
JENNIER POLLARD, individually and as                )
next friend and parent of her minor son, J.H.,      )
                                                    )
          Plaintiff,                                )
                                                    )
          v.                                        )      Civil Action No. 14-cv-14043-DJC
                                                    )
Georgetown School District,                         )
                                                    )
          Defendant.                                )
                                                    )
_____)

MEMORANDUM AND ORDER

CASPER, J.                                                          September 17, 2015

I.      Introduction

        Plaintiff Jennifer Pollard ("Pollard") brings this lawsuit on behalf of her minor son, J.H.,

against the Georgetown School District ("District"); Carol Jacobs, the District Superintendent;

and current and former District employees, Heidi Mongeau, Peter Lucia and Brian Gill

(collectively, "Defendants").  Pollard alleges that Defendants denied her son a free and

appropriate public education and failed to protect him from bullying based upon his disability,

religion, ethnicity and perceived sexual orientation in violation of the First, Fourth and

Fourteenth Amendments, Title IX of the Individuals with Disability Education Act, Title VI of

the Civil Rights Act and the Rehabilitation Act of 1973.  D. 9.  Pollard also asserts similar claims

under Massachusetts state law.  Id.  Defendants have moved to dismiss.  D. 15.  For the reasons

stated below, the Court ALLOWS IN PART and DENIES IN PART their motion to dismiss.

II.     Standard of Review

        In considering a motion to dismiss, the Court will dismiss a claim that fails to plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   To state a plausible claim, a complaint need not contain detailed factual allegations but must recite facts sufficient at least to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555.   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).   Ultimately, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  When considering the motion, the Court can consider implications from documents attached to or fairly incorporated into the complaint, facts susceptible to judicial notice, and concessions in a plaintiff's response to the motion to dismiss. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012).

## III.   Background

### A.   Factual Background

In deciding Defendants' motion to dismiss, the Court accepts the factual allegations in the amended complaint as true but is "not bound to accept . . . a legal conclusion couched as a factual allegation." San Gerónimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 678) (internal quotation mark omitted).

J.H. is a minor and a resident of Georgetown, Massachusetts.  D. 9 (Am. Compl.) ¶ 3. Until he completed eighth grade, J.H. was a student enrolled in the District's public schools. Id. ¶ 4.

J.H. was born prematurely at 27 weeks in September 1999.  Id. ¶ 8.  Throughout his early childhood, J.H. faced physical and developmental challenges.  Id. ¶ 10.  During his childhood and adolescence, he was exceptionally small for his age.  Id.  In addition to his physical ailments, J.H. has been diagnosed with attention deficit hyperactivity disorder and an executive function disorder.  Id. ¶ 11.  His symptoms include inappropriate social behavior, an inability to inhibit impulsive responses and issues with effective problem-solving.  Id. ¶ 12.

As a public school student with a disability, J.H. was prescribed a student accommodation plan under § 504 of the Rehabilitation Act of 1973 ("504 Plan").  Id. ¶ 16.  The 504 Plan directed the District to accommodate J.H. in certain ways, including monitoring his peers' conduct, protecting J.H. from abuse and ensuring specific counseling and supervision.  Id.

As alleged, during his time at Georgetown Middle / High School, J.H. was "regularly emotionally, physically and verbally bullied and abused" because of his unaccepted social behavior, his small physical stature, his Jewish ethnicity and religion, his perceived sexual orientation and other symptoms caused by his developmental disorders.  Id. ¶¶ 18-20.  The abuse and bullying occurred both at school and outside of school.  Id. ¶ 21.  His peers have mocked J.H. "with snide comments about Jews being massacred and stating that the Holocaust was unsuccessful because J.H.'s family survived."  Id. ¶ 23.  They have used social media "to express their desire to kill J.H., to stab him, and to beat him."  Id. ¶ 24.  Students have "posted, texted and written on school property that J.H. is gay and has small sex organs."  Id. ¶ 26.  They have spied on J.H. in the restroom and claim to have taken and disseminated photographs of him there.  Id. ¶ 27.  Some peers have actually assaulted him.  Id. ¶ 25.  "J.H.'s attackers have interfered with the few friendships he has been able to make by telling lies and/or describing J.H's characteristics and disabilities in a manner that drove his friends away and kept others from

interacting with him in a positive way." <u>Id.</u> ¶ 28.

The amended complaint also alleges that the District's teachers and administrators have engaged in their own abusive conduct. <u>Id.</u> ¶ 32. The individual Defendants not only were unsuccessful in protecting J.H. from fellow pupils, but the District's personnel "perpetuated and exacerbated J.H's suffering with their own conduct." <u>Id.</u> ¶ 22. J.H.'s gym teacher implied that J.H. was female or referred to him as female in front of other students. <u>Id.</u> ¶ 33. Another teacher allowed students to force J.H. to work in isolation during group projects. <u>Id.</u> ¶ 34. Abusive conduct and failure to act against the bullying by other students has attracted further abuse. <u>Id.</u> ¶ 36. Throughout this time, J.H. and his parents "made repeated pleas for assistance," but the District's administrators "failed to investigate the issues in a manner that protected J.H., failed to take action to prevent additional abuse, and failed to protect him from this abuse." <u>Id.</u> ¶¶ 38, 40. J.H. was "threatened with punishment for 'retaliating' when reporting threats of physical violence.'" <u>Id.</u> ¶ 41.

### B.    <u>Procedural History</u>

Pollard filed this lawsuit on October 30, 2014. D. 1. She filed an amended complaint on January 13, 2015. D. 9. Defendants have now moved to dismiss that complaint. D. 15. The Court heard argument on the motion on August 6, 2015 and took this matter under advisement. D. 31.

## IV.   Discussion

### A.    Plaintiff Fails to State a Claim for Negligence Against the District and the Individual Defendants (Counts I and II)

Count I alleges a negligence claim against the District. D. 9 ¶¶ 48-58. Defendants argue that Count I must be dismissed because Pollard failed to comply with the presentment requirement under the Massachusetts Tort Claims Act. D. 16 at 4; D. 23 at 4.

Under Massachusetts law, a party asserting a negligence claim against a public employer must first present her claim in writing to the public employer's executive officer.  McCarthy v. City of Newburyport, 252 F. App'x 328, 334 (1st Cir. 2007) (citing Mass. Gen. L. c. 258, § 4). The presentment requirement is written with "conspicuous clarity, and the Massachusetts Supreme Judicial Court . . . has left little doubt that its plain meaning controls."  Haley v. City of Boston, 657 F.3d 39, 54 (1st Cir. 2011) (citing Holahan v. City of Medford, 394 Mass. 186, 189 (1985)).  "Presentment is not a mere technicality," Morales v. Desmarais, No. 12-cv-12096-LTS, 2013 WL 3208610, at *2 (D. Mass. June 21, 2013), but "ensures that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment or inflated or nonmeritorious claims, settle valid claims expeditiously, and takes steps to ensure that similar claims will not be brought in the future." Roges v. Boston Pub. Sch., No. 14-cv-13471-RGS, 2015 WL 1841349, at *4 (D. Mass. Apr. 17, 2015) (quoting Lodge v. Dist. Attorney for the Suffolk Dist., 21 Mass. App. Ct. 277, 283 (1985)) (internal quotation mark omitted).  "It is irrelevant that the defendant may not have suffered any prejudice by reason of the lack of actual notice."  Robinson v. Commonwealth, 32 Mass. App. Ct. 6, 10 (1992).

Pollard concedes that she did not present J.H.'s tort claims to the executive officer.  D. 20 at 4 (stating that Defendants "correctly allege that the plaintiffs did not present J.H.'s state tort claims to the 'executive officer' of the Town of Georgetown").  Yet she argues that the pertinent executive officer here was the District's Superintendent and the Superintendent was nevertheless on notice of "all of J.H.'s claims" because (1) Pollard had asked the Superintendent in December 2013 to find an alternative school placement for J.H., (2) she had complained to the Massachusetts Department of Elementary and Secondary Education in May 2014 about the

5

District's unwillingness to have another school district accept J.H. for high school and (3) the District's counsel had declined in June 2014 to mediate with her. <u>Id.</u> at 4-5.  She attaches documents in support of this argument to her opposition.  D. 20-3, 20-4, 20-5.

Presentment, however, "must be made 'in strict compliance with the statute.'"  <u>Garcia v. Essex Cnty. Sheriff's Dep't</u>, 65 Mass. App. Ct. 104, 107 (2005) (quoting <u>Gilmore v. Commonwealth</u>, 417 Mass. 718, 721 (1994)).  "[A]ctual presentment to the designated executive officer is required."  <u>Berube v. City of Northampton</u>, 413 Mass. 635, 637 n.3 (1992). "[C]onstructive notice" is insufficient.  <u>Id.</u>  Pollard's concession thus dooms her argument. <u>Braga v. Hodgson</u>, 605 F.3d 58, 60 (1st Cir. 2010) (affirming summary judgment on negligence claim because the plaintiff agreed that he did not meet the presentment requirement).

Even if the Court were to consider Pollard's submissions, her argument would still fail.[1] None of these documents provided "notice of the legal basis of liability."  <u>Garcia</u>, 65 Mass. App. Ct. at 109 (holding that the letters "fail to identify precisely the legal basis for the claim and are thus inadequate" because they "do not assert that his injuries were caused by negligence or wrongdoing").  In fact, one document expressly states that the District did not know why Pollard wanted to mediate.  D. 20-3 (stating "[y]our letter fails to explain what you propose mediating and what the family seeks").  The documents instead concern Pollard's request that J.H. "be transferred to another school."  D. 20-4 at 2; <u>see</u> D. 20-5 at 8 (stating that "[t]he School contends that the request for relief is legally not available, i.e., that it cannot be ordered to request that

---

[1]  "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein."  <u>Graf v. Hospitality Mut. Ins. Co.</u>, 754 F.3d 74, 76 (1st Cir. 2014) (quoting <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001)) (internal quotation marks omitted).  A court may, however, consider "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint."  <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013) (citation and internal quotation marks omitted).

another school district accept J.H. for his high school education"); D. 20-3 (stating that "Superintendent Jacobs also continues to be available to discuss school choice options with [J.H.'s] parents, as she did when Ms. Pollard first approached her about that option about a year ago").  Accordingly, the Court finds that Pollard has not met the presentment requirement.  See, e.g., Hutchings v. City of Gardner, No. 20092074, 2010 WL 653968, at *2 (Mass. Super. Ct. Jan. 4, 2010) (holding that the negligence claim failed because although the plaintiff's letters "outlined the plaintiff's numerous disputes with the City's handling of various issues," none of the letters were alleged to have presented his negligence claim in writing).

The Court, however, dismisses Count I without prejudice.  The statute requires a plaintiff to present her claim "within two years after the date upon which the cause of action arose." Mass. Gen. L. c. 258, § 4.  Based on the current allegations, it is unclear whether a presentment letter will be timely because the amended complaint does not specify when the District's tortious conduct occurred.

Count II alleges negligence against the individual Defendants.  D. 9 ¶¶ 59-67.  The Court dismisses Count II with prejudice because under Massachusetts law, public employees like the individual Defendants are immune from negligence claims.  Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (holding that plaintiff's claims "against the Department of Corrections defendants in their individual capacities are barred because the Tort Claims Act shields public employees from personal liability for negligent conduct").

## B. Plaintiff Fails to State a Claim for the Denial of the Right to a Free and Appropriate Education (Count III)

Count III alleges that J.H. had a 504 Plan designed to address his special needs, the District was required to adhere to the plan and the District violated Title IX of the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act and Mass. Gen. L. c. 71B

by "creating and tolerating an educational environment in which J.H. was the target of ongoing abuse and discrimination" and "den[ying] [J.H.'s] right to a free and appropriate education."  D. 9 ¶¶ 73, 75.  Defendants argue that Count III must be dismissed because Pollard failed to exhaust required administrative remedies.  D. 16 at 4-7; D. 23 at 1-3.

The Individual with Disabilities Education Act ("IDEA") requires states receiving federal financial assistance "to ensure a 'free appropriate public education' to all children with disabilities."  Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993) (quoting 20 U.S.C. §§ 1400(c), 1412(1)).  To that end, IDEA "imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free appropriate public education."  Id.  Specifically, IDEA provides "parents with an opportunity to lodge formal complaints 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'"  Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 58 (1st Cir. 2002) (quoting 20 U.S.C. § 1415(b)(6)).  "A complaining parent has recourse to an impartial due process hearing conducted by either the local or state educational agency (and if the hearing is conducted at the local level, the parent may then appeal to the state agency)."  Id. (citing 20 U.S.C. § 1415(f)-(g)).  In Massachusetts, the Bureau of Special Education Appeals ("Bureau") handles these appeals through mediations and hearings.  Id. (citing 603 Mass. Code Regs. § 28.08).

If the parent remains dissatisfied after a due process hearing, "she may file a civil action in state or federal court."  Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000) (citing 20 U.S.C. § 1415(i)(2)(A)).  But before filing a lawsuit, "IDEA mandates that plaintiffs exhaust administrative remedies through the due process hearing."  Id.  "The First Circuit has broadly interpreted the exhaustion requirement of 20 U.S.C. § 1415(l) to include claims brought under

8

other statutes, even if [litigants] seek damages not allowed" by IDEA.  City of Boston v. Bureau of Special Educ. Appeals, No. 06-cv-11703-RWZ, 2008 WL 2066989, at *3 (D. Mass. Apr. 30, 2008).  The purpose of exhaustion is to "enable[] the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."  Rose, 214 F.3d at 210 (quoting Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989)) (internal quotation marks omitted).

Pollard agrees that the exhaustion requirement applies but argues that she exhausted administrative remedies because she filed a complaint with the Massachusetts Department of Elementary and Secondary Education.  D. 20 at 6-7; D. 20-2.  That agency, however, is not the body that conducts the required due process hearing; the Bureau is.  Frazier, 276 F.3d at 58-59 (noting that in Massachusetts, "the Department of Education has created the Bureau of Special Education Appeals . . . and empowered it to handle such appeals through mediations and hearings").

Although the exhaustion requirement "remains the general rule," id. at 59, a party does not need to exhaust "if she can show that the agency's adoption of an unlawful general policy or practice would make resort to the agency futile, or that the administrative remedies afforded by subchapter II of IDEA are inadequate given the relief sought."  Weber v. Cranston Sch. Comm., 212 F.3d 41, 52 (1st Cir. 2000).  A party who seeks to bypass the administrative process "bears the burden" of showing why futility applies.  Frazier, 276 F.3d at 59.

Pollard did not raise futility in her brief.  Instead, for the first time at oral argument, Pollard argued that she did not pursue an administrative hearing with the Bureau because it allegedly could not have granted the relief she wanted and J.H. was no longer a student with the

District.  Pollard's belated argument cannot save her claim.  As the First Circuit has explained, exhaustion is beneficial "regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff."  Id. at 61.  Additionally, it would be "a hollow gesture to say that exhaustion is required—and then to say that [a plaintiff], by holding back until the affected child graduates, can evade the requirement" because "the entire matter of timing is largely within a plaintiff's control."  Id. at 63.  Count III is dismissed with prejudice.

### C. Plaintiff Fails to State a Claim for an Equal Protection Violation (Count IV)

Count IV alleges that the District's conduct towards J.H. violated the Fourteenth Amendment by "afford[ing] J.H. a lower level of protection as opposed to other students due to his characteristics, thereby exposing J.H. to an unusually serious risk of harm."  D. 9 ¶ 82.

The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group."  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-106 (1st Cir. 2015).  To survive a motion to dismiss, a plaintiff "must allege facts plausibly demonstrating that compared with others similarly situated," the plaintiff was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Id. at 106 (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)) (internal quotation marks omitted).  The standard for determining whether individuals are similarly situated "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."  Id.

Here, although Pollard alleges that the District afforded J.H. a lower level of protection compared to "other students," D. 9 ¶ 82, she never alleges any facts to establish that these

students are similarly situated.   Nor does Pollard allege any facts to establish that the District

treated J.H. differently from these students or that the District based its differential treatment on

a constitutionally impermissible consideration.   See, e.g., Schofield v. Clarke, 769 F. Supp. 2d

42, 48 (D. Mass. 2011) (dismissing equal protection claim where the plaintiff "fail[ed] to set

forth any facts showing that he was treated differently from others who were similarly situated").

Pollard also bases the equal protection claim on a "class of one" theory.   D. 20 at 10.   To

plead a "class of one" claim, Pollard must allege facts to establish that J.H. was intentionally

treated differently from others who were similarly situated without a rational basis and the

difference was "due to malicious or bad faith intent on the part of the defendants to injure [him]."

Priolo v. Town of Kingston, 839 F. Supp. 2d 454, 460 (D. Mass. 2012) (quoting Walsh v. Town

of Lakeville, 431 F. Supp. 2d 134, 145 (D. Mass. 2006)) (internal quotation mark omitted).

"[C]lass-of-one claims require 'an extremely high degree of similarity between [the plaintiffs]

and the persons to whom they compare themselves.'"   Freeman v. Town of Hudson, 714 F.3d 29,

38 (1st Cir. 2013) (second alteration in original) (quoting Cordi-Allen v. Conlon, 494 F.3d 245,

251 (1st Cir. 2007)).   Pollard's failure to plead factual allegations about J.H.'s similarity to other

students and the District's differential treatment is thus fatal to the "class of one" theory too.

Separately, Pollard also fails to allege that the District's differential treatment was due to malice

or bad faith.   Rupprecht v. City of Pittsfield, No. 10-cv-30200-MAP, 2011 WL 1486594, at *2

(D. Mass. Mar. 4, 2011) (dismissing "class of one" claim where plaintiff "fail[ed] to adequately

allege any malice or bad faith"), report and recommendation adopted, 2011 WL 1486596 (D.

Mass. Apr. 19, 2011).   Count IV is dismissed without prejudice.

   **D.   Plaintiff Fails to State a Claim for a Procedural Due Process Violation (Count V)**

Count V alleges that the District violated due process under the Fourteenth Amendment and the Massachusetts Declaration of Rights because Pollard and J.H. did not receive notice or an opportunity to be heard on the District's investigation practices.  D. 9 ¶¶ 90, 92.  Count V also asserts that the District violated the Massachusetts Civil Rights Act ("MCRA").  This part of the claim, however, fails on its face because a municipality "cannot be sued under the MCRA." Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 157 (D. Mass. 2009) (citing Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002)).

"[A]s a general proposition, the federal and Massachusetts standards for a procedural due process analysis are identical."  Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 215 n.1 (D. Mass. 2005) (citing Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Assn., 418 Mass. 436, 443 (1994)).  "[T]o establish a procedural due process claim under section 1983, a plaintiff 'must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without constitutionally adequate process.'"  Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (quoting PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991)).

Pollard asserts that the District deprived J.H. of his "fundamental right to education."  D. 9 ¶ 88.  Yet even so, Pollard and J.H. cannot show that they were denied due process.  As explained above, IDEA "imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free public education."  Doe v. Town of Framingham, 965 F. Supp. 226, 228 (D. Mass. 1997) (quoting Pihl, 9 F.3d at 187).  Parents can present a complaint on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  In Massachusetts, a complaint triggers the right to an impartial due

12

process hearing conducted by the Bureau.  Pollard did not make use of these procedures to challenge the District's allegedly flawed investigatory and disciplinary practices on bullying. She cites no case to support her assertion that a parent or child is constitutionally entitled to additional process when a congressionally mandated due process hearing and process already exists to consider her complaints.  Cf. Johnson v. Prospect Mountain JMA Sch. Dist. SAU 301, No. 13-cv-00207-LM, 2014 WL 2588952, at *7 (D.N.H. June 9, 2014) (noting that in a case where the coach allegedly harassed the plaintiff, "it cannot reasonably be argued that, for example, [the plaintiff minor] had a constitutional right to notice and a hearing every time [the principal] made a decision regarding [the coach's] continued employment").

Pollard's chief purpose in advancing this claim, however, appears to be that the District's failure to follow its own procedures constitutes a procedural due process violation.  D. 20 at 11-12.  But an "agency's failure to follow its own rules" does not constitute a denial of due process because "the federal Due Process Clause does not incorporate the particular procedural structure enacted by state or local governments."  Arvanitis v. Massachusetts Dep't of Correction, No. 10-cv-10213-DJC, 2011 WL 4436761, at *5 (D. Mass. Sept. 21, 2011) (quoting Chmielinski v. Massachusetts, 513 F.3d 309, 316 n.5 (1st Cir. 2008)) (internal quotation mark omitted).  Count V is dismissed with prejudice.

### E.    Plaintiff Fails to State a Claim under the First Amendment and Article 16 for a Violation of the Right to Associate (Count VI)

Count VI alleges that by "permitt[ing] the bullying of J.H. to occur," the District violated J.H.'s right to associate and interfered with "his personal relationships during his critical, formative years" under the First Amendment and Article 16 of the Massachusetts Declaration of Rights.  D. 9 ¶ 98.  The District argues that this claim must be dismissed because J.H.'s friendships with his classmates are not protected by the First Amendment.  D. 16 at 11-13.

13

The U.S. Supreme Court "has identified two types of 'freedom of association' that merit constitutional protection: (i) 'choices to enter into and maintain certain intimate human relationships' and (ii) association 'for the purpose of engaging in those activities protected by the First Amendment,'" such as speech, assembly, petition for the redress of grievances and the exercise of religion. URI Student Senate v. Town Of Narragansett, 631 F.3d 1, 12-13 (1st Cir. 2011) (quoting Roberts vs. U.S. Jaycees, 468 U.S. 609, 617-18 (1984)).   The Constitution, however, does not protect "a generic right to mix and mingle." URI Student Senate, 631 F.3d at 13 (citing City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989)).   Although "it is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall— . . . [that] kernel is not sufficient to bring the activity" within the First Amendment's protection. Stanglin, 490 U.S. at 25.

Courts have thus found that social friendships like the ones alleged here are "legally insufficient to be protected by the First Amendment." Kirby v. Loyalsock Twp. Sch. Dist., 837 F. Supp. 2d 467, 474 (M.D. Pa. 2011) (finding that school officials' failure to punish bullying, which caused plaintiff to quit her basketball team and skip school events like graduation, did not violate the plaintiff's freedom of association).   "Just as one does not have a constitutional right to select colleagues at work, neither does an individual have a protected right to choose their classmates." Strehlke v. Grosse Pointe Pub. Sch. Sys., No. 14-cv-11183-PJD, 2014 WL 4603482, at *12 (E.D. Mich. Sept. 15, 2014) (rejecting claim that school system's demarcation of high school attendance areas violated students' freedom of association); see Martsolf v. Christie, 552 F. App'x 149, 152 (3d Cir. 2013) (affirming dismissal of intimate association claim alleging harm to relationships with "longtime friends and colleagues"); Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 442 (3d Cir. 2000) (concluding that

relationships among fraternity brothers were not protected by the right of intimate association); Gruenke v. Seip, 225 F.3d 290, 308 (3d Cir. 2000) (holding that a coach's alleged interference with a student's interaction with fellow swim team members "clearly does not amount to a violation of a protected right"); A.B. v. Montgomery Area Sch. Dist., No. 10-cv-00484-JEJ, 2012 WL 3288113, at *4 (M.D. Pa. Aug. 10, 2012) (dismissing First Amendment claim where the plaintiff alleged that the school district's deliberate indifference to bullying interfered with the plaintiff's personal relationships); Brayton v. Monson Pub. Sch., 950 F. Supp. 33, 38 (D. Mass. 1997) (holding that conditions proposed as prerequisites for high school coach's reinstatement did not violate the First Amendment, where letter "merely proposed that during his period of temporary suspension the plaintiff was not to communicate with coaches and/or players, regarding soccer . . . . [and] not [to] participate in or attend games, practices, award programs, or any other activities related to the soccer program") (emphasis removed and internal quotation marks omitted).

Count VI fails as a matter of law and the Court dismisses both the federal and state freedom of association claims with prejudice.  Reaves v. Corr. Med. Servs., No. 00-2363-E, 2005 WL 2439195, at *7 (Mass. Super. Ct. Sept. 16, 2005) (noting that "[t]he analysis of a cause of action under Article 16 is the same as under the First Amendment").

> **F.    Plaintiff States a Retaliation Claim under the Rehabilitation Act But Not under the First Amendment and the Massachusetts Declaration of Rights (Count VII)**

Count VII alleges that the Defendants violated the First Amendment and Article 16 of the Massachusetts Declaration of Rights by retaliating against J.H. for reporting instances of bullying.  D. 9 ¶¶ 102-106.  Pollard also appears to be asserting retaliation claims under the Rehabilitation Act.  D. 20 at 14.

"To make out a prima facie case of retaliation" under the Rehabilitation Act, "a plaintiff must show that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012). Pollard alleges "J.H. was abused during sixth grade and the abuse continued until the very last week of eighth grade." D. 9 ¶ 37. "Throughout that time, J.H. and his parents made repeated pleas to teachers and administrators for assistance." Id. ¶ 38. "In fact, J.H. was threatened with punishment for 'retaliating' when reporting threats of physical violence." Id. ¶ 49. "J.H.'s right to free speech was chilled by the above-named defendants by their impotent reactions to the bullying he suffered and the threat of discipline if J.H. reported threats by other students." D. 9 ¶ 103. "J.H. was unable to fully and freely communicate to teachers and administrators and amongst his peers while at school due to fear of physical, verbal and psychological attacks due to the defendants' actions or inaction and their failure to protect J.H." Id. ¶ 104.

J.H. has at least plausibly pled a retaliation claim. See Esposito, 675 F.3d at 41 (noting that "advocacy on behalf of disabled students on issues related to their civil rights is protected activity under the Rehabilitation Act"); Seamons v. Snow, 84 F.3d 1226, 1237-38 (10th Cir. 1996) (concluding that the student's complaint about hazing was entitled to First Amendment protection). Courts, however, have held that individuals cannot be held personally liable for retaliation claims under the Rehabilitation Act, so Pollard's claim against the individual Defendants will be dismissed with prejudice. See, e.g., Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303, 783 F.3d 634, 644 (7th Cir. 2015) (noting that "[t]he district court was also correct to dismiss them in their individual capacity for the discrimination and retaliation claims arising

directly under the Rehabilitation Act"); Doe v. Town of Bourne, No. 02-cv-11363-DPW, 2004 WL 1212075, at *3 (D. Mass. May 28, 2004) (dismissing claims because "individuals in their individual capacities are not liable under § 504 [of the Rehabilitation Act]").

To plead a First Amendment retaliation claim, a party must show that (1) "her conduct was constitutionally protected" and (2) "the protected conduct was a substantial or motivating factor driving the allegedly retaliatory decision." Hannon v. Beard, 979 F. Supp. 2d 136, 140 (D. Mass. 2013). Under 42 U.S.C. § 1983, a municipality is liable "only where that government's policy or custom is responsible for causing the constitutional violation or injury." Kelley, 288 F.3d at 9. And it is "axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

Here, Pollard has not alleged that any retaliatory action committed by the District resulted from an official policy or custom. Nor has Pollard alleged how, why or when each of the individual Defendants retaliated against J.H. The First Amendment and Article 16 retaliation claims are dismissed without prejudice. Comeau v. Town of Webster, 881 F. Supp. 2d 177, 186-87 (D. Mass. 2012) (dismissing § 1983 claim against municipality where "[p]laintiffs' formulaic allegation . . . [concerning official policy or custom] is precisely the type of blanket, conclusory allegation that the Supreme Court has determined should not be given credit when standing alone"); Reaves, 2005 WL 2439195, at *7 (Article 16 and First Amendment claims are analyzed identically).

**G.     Plaintiff Fails to State a Claim for a Substantive Due Process Violation (Count VIII)**

Count VIII alleges a claim for substantive due process under the Fourteenth Amendment, the MCRA and the Massachusetts Declaration of Rights against all Defendants.  D. 9 ¶¶ 107-113.

To establish a substantive due process claim, a plaintiff "must show . . . that the acts were so egregious as to shock the conscience" and "that they deprived him of a protected interest in life, liberty, or property."  Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).  To shock the conscience, the conduct "must at the very least be extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable."  Id. (citations and internal quotation marks omitted).  "'[M]ere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior."  Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005)).  "[A] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."  Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (second alteration in original) (internal quotation marks and citation omitted).

Importantly, a plaintiff must show "that the deprivation of this protected right was caused by governmental conduct."  Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005).  "The Due Process Clause acts as a check on the government, not on actions by private individuals."  Id.  In situations, however, where "there is a 'special relationship,' an affirmative, constitutional duty to protect may arise when the state 'so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'"  Id. (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)).  Yet the

18

affirmative duty to protect does not arise "from the state's knowledge of the individual's predicament or from its expression of intent to help him," but from "the limitation which [the state] has imposed on [an individual's] freedom to act on his own behalf."  J.R. v. Gloria, 593 F.3d 73, 79 (1st Cir. 2010) (citation and internal quotation marks omitted).  An affirmative duty may also arise "when the state creates the danger to an individual."  Rivera, 402 F.3d at 36. Pollard argues that both the "special relationship" and the "state danger" exceptions apply.  D. 20 at 15.

Although the First Circuit has not held outright that a "special relationship" can never arise between a school and a child, it has expressed skepticism, because "circuits that have confronted this issue have uniformly rejected" the argument and the U.S. Supreme Court has come "pretty close to rejecting it in a recent dictum."  Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999) (citing Vernonia Sch. Dist. v. Acton, 515 U.S. 646, 655 (1995)); see Morrow v. Balaski, 719 F.3d 160, 170 (3d Cir. 2013) (en banc) (stating that "every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students" and citing Hasenfus).  And federal courts have rejected application of this exception in bullying cases.  See, e.g., Morrow, 719 F.3d at 177 (affirming the dismissal of substantive due process claim on a motion to dismiss where the plaintiffs were subjected to a series of threats and physical assaults by a fellow student, and school officials chose not to remove the bully but instead advise the plaintiffs to transfer schools because their safety could not be guaranteed); Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ., 3 F. App'x 25, 27-31 (4th Cir. 2001) (declining to find a special relationship despite "disturbing" allegations in the complaint of repeated physical assaults and bullying that caused the middle-school plaintiff to suffer from serious physical,

psychological and emotional issues); Estate of Brown v. Cypress Fairbanks Indep. Sch. Dist., 863 F. Supp. 2d 632, 639 (S.D. Tex. 2012) (dismissing for failure to state a claim and explaining that "in the absence of a special relationship between the school and the student, public school officials who enact anti-bullying policies do not violate a student's constitutional due process rights by failing to enforce such policies, no matter how pervasive the bullying [and] no matter how hateful"); Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 307 (D. Mass. 2014) (dismissing substantive due process claim on summary judgment in part because no special relationship existed between the school and a disabled middle school student who had been sexually assaulted and harassed by another student).

Similarly, the First Circuit has "never embraced" the existence of the state-created danger theory. Enwonwu v. Gonzales, 438 F.3d 22, 30 (1st Cir. 2006). To the extent this exception exists, "[l]iability under the doctrine is available only where '[a] government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant or affirmatively prevents the individual from receiving assistance.'" Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 134-35 (D. Mass. 2001) (second alteration in original) (quoting Frances–Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997)). Non-action, such as the "failure to report" or a "failure to investigate, or more generally to prevent," is not enough. Town of Bourne, 2004 WL 1212075, at *8. "[T]he state-created danger theory does not open the door for due process violations for situations in which students are harmed by other students, even where the school deliberately ignores either a threat or actual prior instances of violence." Id. Nor does this exception apply if "the victim would have been in about the same or even greater danger even if the state officials had done nothing." McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 466 (6th Cir. 2006); see Morrow, 719 F.3d at 178.

Even if one assumes that either exception applies, the alleged conduct must be sufficiently brutal and outrageous.  J.R., 593 F.3d at 79; Hasenfus, 175 F.3d at 73.  Courts have ruled that governmental conduct in similar cases did not constitute the conscience-shocking conduct required by law.  Smith v. Guilford Bd. of Educ., 226 F. App'x 58, 61-62 (2d Cir. 2007) (affirming judgment on the pleadings because allegations that school officials condoned and permitted classmates to bully and harass "persistently" a ninth grader who was "4'7" tall and weighed approximately 75 pounds" and "suffered from Attention Deficit Hyperactivity Disorder"—although "highly unfortunate"—was not "so brutal and offensive to human dignity"); Hasenfus, 175 F.3d at 70 (affirming dismissal of complaint because conscious-shocking standard was not met; school officials allegedly failed to prevent and took also affirmative acts, including reprimanding the plaintiff minor, that led to her attempted suicide); Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1254 (10th Cir. 1996) (concluding on summary judgment that although a teacher who called a minor a prostitute over a month-and-a-half period while classmates joined the taunting engaged in "flagrant misconduct," it did not shock the conscience); Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla., 960 F. Supp. 2d 1254, 1262 (N.D. Okla. 2013) (dismissing claim on a motion to dismiss and holding that allegations that middle school student with a learning disability became depressed and suicidal from "almost constant bullying" and "physical abuse" while the school district did nothing to limit the bullying and "itself engaged in bullying behavior" did not shock the conscience);  Willhauck, 164 F. Supp. 2d at 135 (allowing partial judgment because while the "brutal attack by a student with severe behavioral problems" on plaintiff was "no doubt . . . tragic," the defendants' alleged failure to supervise the assailant, even if negligent, was not "sufficiently outrageous").   Although the Court concludes that J.H's

21

experience as alleged is very troubling, without additional allegations, the amended complaint does not meet the high standard imposed on substantive due process claims.

Finally, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution." Iqbal, 556 U.S. at 676. "In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation'" to claim a plausible entitlement to relief. Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Iqbal, 566 U.S. at 662). Pollard fails to plead how any of the individual Defendants' own actions violated the Constitution because the amended complaint contains no factual allegations about what each individual Defendant knew or did. A.W. v. Humble Indep. Sch. Dist., 25 F. Supp. 3d 973, 1005 (S.D. Tex. 2014) (dismissing § 1983 claims against individual defendants who allegedly were deliberately indifferent to sexual abuse because "[i]nstead of describing what each defendant allegedly knew or did, plaintiffs make only generic and global references to 'School Officials'").

The claims under the Fourteenth Amendment for all Defendants, the Massachusetts Declaration of Rights for all Defendants and the MCRA against the individual Defendants are dismissed without prejudice. Willoughby v. Town of Tisbury, 750 F. Supp. 2d 374, 383 (D. Mass. 2010) (dismissing MCRA claims because plaintiffs "failed to establish that the Individual Defendants violated their constitutional rights"); Christensen, 360 F. Supp. 2d at 215 n.1 (where a plaintiff fails to show that the Massachusetts Declaration of Rights provides greater substantive due process rights, the federal and state claims are treated identically). However, the MCRA portion of Count VIII against the District is dismissed with prejudice because municipalities face no liability under the MCRA. Bolduc, 629 F. Supp. 2d at 157.

**H.    Plaintiff Fails to State a Claim Under Title VI (Count IX)**

Count IX alleges that Defendants violated Title VI of the Civil Rights Act of 1964 by reacting "in a deliberately indifferent manner" to bullying against J.H. on the basis of his religion and ethnicity.  D. 9 ¶ 124; see I.E. v. Pine Bush Central Sch. Dist., 58 F. Supp. 3d 332, 354-55 (S.D.N.Y. 2014) (addressing anti-Semitic harassment as national origin discrimination for the purposes of Title VI).  Because "individuals cannot be held liable under Title VI," the Court dismisses this claim against the individual Defendants and addresses only the District's liability. Thomas v. Salem State Univ. Found., Inc., No. 11-cv-10748-DJC, 2011 WL 5007973, at *6 (D. Mass. Oct. 18, 2011).

"Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin."  Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664 (2d Cir. 2012).  "[I]n the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student."  Id. at 665. "[T]o establish liability in connection with student-on-student harassment," a plaintiff must show: (1) "that he or she was subject to 'severe, pervasive, and objectively offensive' [] harassment by a school peer" on the basis of race, color, or national origin; (2) "that the harassment caused the plaintiff to be deprived of educational opportunities or benefits"; (3) "[the funding recipient] knew of the harassment (4) in its programs or activities"; and "(5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances."  Springfield Sch. Comm., 59 F. Supp. 3d at 301 (second alteration in original); see Zeno, 702 F.3d at 665-66 (extending Title IX's deliberate indifference framework to Title VI); Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 521 (3d Cir. 2011) (noting that a plaintiff may recover under  Title VI for alleged severe,

pervasive, and objectively offensive student-on-student harassment if the school acts with deliberate indifference); Bethany T. v. Raymond Sch. Dist. with Sch. Admin. Unit 33, No. 11-cv-00464, 2013 WL 1933756, at *1 (D.N.H. May 10, 2013) (applying Title IX's deliberate indifference framework to Title VI claim of student-on-student harassment).

Here, Pollard alleges that "[d]uring his time at the Georgetown Middle / High School, J.H. was regularly emotionally, physically and verbally abused and bullied" over five characteristics: (1) his unaccepted social behavior, (2) his small physical stature, (3) the perception of his sexual orientation, (4) his Jewish ethnicity and religion and (5) other symptoms caused by his development disorders. D. 9 ¶ 18. The amended complaint provides one allegation related to ethnic or national origin harassment: "Fellow students have mocked J.H. for his religion and ethnicity with snide comments about Jews being massacred and stating that the Holocaust was unsuccessful because J.H.'s family survived." Id. ¶ 23.

Pollard does not adequately allege a Title VI discrimination claim because the amended complaint does not contain sufficient, non-conclusory factual allegations that the harassment was severe and pervasive. In HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-cv-5881-CS, 2012 WL 4477552, at *15 (S.D.N.Y. Sept. 27, 2012), the court held that although the plaintiffs alleged that students called the Puerto Rican plaintiff derogatory racial names on numerous occasions, the inclusion of only "one reference to race-related name calling" in the complaint could not establish severe, pervasive and objectively offensive conduct. See Folkes v. New York Coll. of Osteopathic Med. of New York Inst. of Tech., 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002) (dismissing student's Title VI claim because although the comment was "certainly offensive," it was "a single incident that does not rise to the level of severity necessary to make out a claim"). Although the comments here were certainly objectively offensive, the factual allegations as

presently alleged do not meet the high standard of severity or pervasiveness under well-developed case law, but Pollard may seek to amend as to same.

The complaint does include a few other allegations of peer harassment, but it either does not explain the basis, D. 9 ¶¶ 24-25, or alleges that the harassment was based on his perceived sexual orientation, id. ¶¶ 26-27.  Title VI, however, forbids discrimination only on the basis of race, color or national origin.  Alleged discrimination based on non-racial characteristics are "not cognizable under Title VI."  Stevens v. Skenandore, No. 99-cv-02611, 2000 WL 1069404, at *2 (7th Cir. 2000); see HB, 2012 WL 4477552, at *15-17 (analyzing allegations of racial-based and gender-based discriminatory remarks made by fellow students under the plaintiffs' respective Title VI and Title IX claims and concluding that neither type of harassment was sufficiently severe); Vargas Alicea v. Consortium of Mayaguez/Las Marias, 360 F. Supp. 2d 367, 372 (D.P.R. 2005) (granting summary judgment on Title VI claims because the "only allegations of discrimination in this lawsuit are based on [the plaintiff's] physical disability"), aff'd, 173 F. App'x 6 (1st Cir. 2006).

Finally, Pollard alleges that "[t]he above-named administrators were advised of and/or were otherwise aware of the abuse throughout that time," that Defendants "had actual knowledge" and that they "reacted in a deliberately indifferent manner."  D. 9 ¶¶ 39, 124.  These "undetailed and conclusory assertion[s]" that the District was on notice and acted deliberately indifferent are insufficient.  Doe v. Bradshaw, No. 11-cv-11593-DPW, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (dismissing the portion of a Title IX claim based on knowledge of the peer-on-peer harassment because other than offering conclusory boilerplate, the plaintiffs "fail to allege . . .  that the defendants knew [the minor] was being harassed by her peers or even

knew about the harassment, let alone deliberately avoided remedying the harassment"). Count

IX is dismissed without prejudice.

### I.    Plaintiff Fails to State a Claim for Intentional and Negligent Infliction of Emotional Distress (Counts X and XI)

Count X alleges a claim for intentional infliction of emotional distress against all

Defendants. D. 9 ¶¶ 129-135. Under Massachusetts law, however, public employers like the

District "remain immune from 'any claim arising out of an intentional tort[.]'" Wilmot v.

Tracey, 938 F. Supp. 2d 116, 143 (D. Mass. 2013) (alteration in original) (quoting Mass. Gen.

Laws ch. 258, § 10(c)). The Court dismisses this claim against the District with prejudice.

A party, however, may assert an intentional infliction of emotional distress claim against

public employees in their individual capacity. Parker v. Chief Justice For Admin. & Mgmt. of

Trial Court, 67 Mass. App. Ct. 174, 180 (2006). To state this claim under Massachusetts law, a

plaintiff must show "(1) that the defendant intended to cause, or should have known that his

conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and

outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the

plaintiff suffered severe distress." Doe v. D'Agostino, 367 F. Supp. 2d 157, 173 (D. Mass.

2005). "The strength of a standard is always a matter of degree, but the Massachusetts cases are

demanding." Kennedy v. Town Of Billerica, 617 F.3d 520, 530 (1st Cir. 2010). "The extreme

and outrageous conduct 'must be beyond all bounds of decency and . . . utterly intolerable in a

civilized community.'" D'Agostino, 367 F. Supp. 2d at 173 (quoting Sena v. Commonwealth,

417 Mass. 250, 264 (1994)).

Two Massachusetts courts have recently addressed this claim in the school bullying

context. In Maclellan v. Dahlheimer, No. MICV-2011-02611-H, 2012 WL 6971005, at *2

(Mass. Super. Ct. Dec. 21, 2012), a mother alleged that a teacher treated her third-grade child

"disparaging[ly]" and that the teacher's actions had encouraged other students to bully her child, resulting in "a page-long list of incidents." Id. at *2. The mother also alleged that both the teacher and the principal knew about the bullying, but took no action to stop it. Id. In fact, the principal reportedly told the son's parents that he "would not talk to them anymore and they should not bother calling him or leaving any messages at his office." Id. The principal also allegedly followed the child around "in a menacing way," "star[ed] and glar[ed] at him for no reason," and "made clear" to the child "that he did not want to hear any more complaints." Id. The court concluded that because the allegations only established that the defendants had "failed to stop bullying by other students" and that the teacher had "created an atmosphere conducive to . . . bullying . . . by the disparaging way she treated [the child]," the conduct was not "sufficiently extreme and outrageous" to constitute intentional infliction of emotional distress. Id. at *3-4. On the other hand, had the complaint "alleged that a school principal, or a third-grade teacher, was bullying an eight-year-old, such actions might satisfy the very high standard." Id. at *3.

In Parsons ex rel. Parsons v. Town of Tewksbury, No. 091595, 2010 WL 1544470, at *1 (Mass. Super. Ct. Jan. 19, 2010), the plaintiffs alleged that their middle-school child was bullied by his fellow students, at one point requiring multiple surgeries and hospital stays. The school guidance counselor allegedly failed to respond to actual notice of the bullying, "failed to deter student intimidation, failed to make clear the consequences of bullying, and failed to employ community resources to prevent violence." Id. At one point, after a fight, the school behavior management facilitator told the child to "walk . . . off" his injuries. Id. The court concluded that although defendants "appear to have mishandled and underestimated the seriousness of the situation," their conduct "was not, as a matter of law, beyond all bounds of decency and utterly intolerable in a civilized community." Id. at *4.

Here, Pollard has not alleged, other than in conclusory fashion, what the individual Defendants' affirmatively did and how their individual conduct intended to cause or actually caused J.H.'s emotional distress.  Instead, the crux of the amended complaint appears to be that the individual Defendants failed to act, despite knowing that bullying was happening.  Unfortunately, Massachusetts courts have found that this type of passive conduct is insufficient to state a claim.  Maclellan, 2012 WL 6971005, at *3; Parsons ex rel. Parsons, 2010 WL 1544470, at *1; Bradshaw, 2013 WL 5236110, at *13 (dismissing intentional infliction of emotional distress claim on a motion to dismiss against school officials in a case where the plaintiff alleged that they failed to investigate allegations of a coach's inappropriate sexual conduct with the plaintiff, failed to remedy peer harassment and failed to provide the plaintiff a free and appropriate public education).  Count X is dismissed without prejudice.

Count XI alleges a claim for negligent infliction of emotion distress against all Defendants.  D. 9 ¶¶ 136-141.  Because this tort claim sounds in negligence, the presentment requirement applies, and for the reasons stated above, the claim is dismissed against the District without prejudice.  Piccone v. Dickinson, No. 12-cv-30127-MAP, 2013 WL 2631317, at *7 (D. Mass. June 10, 2013).  On the other hand, because the individual Defendants are immune from claims against negligence, Count XI for them is dismissed with prejudice.  Caisse, 346 F.3d at 218.

## V.     Conclusion

For these reasons, the Court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss.  Count I (negligence – the District) and Count IV (equal protection) are DISMISSED WITHOUT PREJUDICE.  Count II (negligence – individual Defendants), Count III (denial of the right to a free and appropriate education), Count V (procedural due process) and

Count VI (freedom of association) are DISMISSED WITH PREJUDICE. On Count VII, the Court DENIES Defendants' motion on the Rehabilitation Act retaliation claim against the District, DISMISSES WITH PREJUDICE the Rehabilitation Act retaliation claims against the individual Defendants and DISMISSES WITHOUT PREJUDICE the First Amendment and the Massachusetts Declaration of Rights retaliation claims against all Defendants. On Count VIII, the Court DISMISSES WITH PREJUDICE the MCRA claim against the District and DISMISSES WITHOUT PREJUDICE the MCRA claims against the individual Defendants and the Fourteenth Amendment and the Massachusetts Declaration of Rights substantive due process claims against all Defendants. On Count IX (Title VI), the Court DISMISSES WITH PREJUDICE against the individual Defendants and DISMISSES WITHOUT PREJUDICE against the District. On Count X (intentional infliction of emotional distress), the Court DISMISSES WITH PREJUDICE against the District and DISMISSES WITHOUT PREJUDICE against the individual Defendants. On Count XI (negligent infliction of emotional distress), the Court DISMISSES WITH PREJUDICE against the individual Defendants and DISMISSES WITHOUT PREJUDICE against the District. If Pollard seeks to amend the portions of the amended complaint dismissed without prejudice, she must file a second amended complaint by no later than October 7, 2015.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge